LLB. And if the lawyers would just step up and introduce themselves, please. Good morning, Your Honors. Kevin Malloy on behalf of the Allance LKQ Corporation and LKQ Smart Parts. I'm James Walsh on behalf of Universal Underwriters, the affiliate. Thank you, gentlemen. And Mr. Malloy? Thank you, Your Honor. Regarding the timing, 15 minutes per side? Right. Reserve time for? Yes. I'd like to reserve five minutes for rebuttal. May it please the Court, the issue in this case is not whether a claim for spoliation is a claim for property damages. That is what the Circuit Court focused on, yet the policy's coverage is not so narrow. In a cause of action for spoliation, damages may be for the diminished value of a cause of action or the diminished value of a defense, as was alleged against LKQ in the underlying action here, and not for property damage per se. But those damages are because of, result of, and are a consequence of the destruction of some type of evidence and the loss of use of that evidence to either support or defend a lawsuit. Your argument is that the tangible automobile your client lost use of, and therefore the loss of the use of that car affected as consequential damages the value of the lawsuit. That's right, Your Honor. The insurer here, LKQ, negligently destroyed this auto. And as a result of that, first Illinois farmers were sued in the underlying action for spoliation, and then farmers in turn brought LKQ into the case for spoliation. So farmers lost their valid, the loss of their defense. Is there a loss of use provision in the policy in Essex? There is, Your Honor. The Essex court described the coverage here, and it did say the definition of the coverage included a loss of use provision. Isn't that what you're saying here, that the loss of use is what this case is about as opposed to the tangible property? It's about the damages that arise from the loss of the use and also the damage. You have to have, and here we have both. We have damage to the vehicle, and as a result of that damage, there's resulting loss of use. Is that how you're distinguishing Essex, that the loss of use wasn't decided by the court or that wasn't an issue in the court? Yes, in part, Your Honor. And I believe the court didn't address it because the insurer, well, because of the exclusion, but the insurer argued that, and this is on page 440 of the opinion. Appellant argues that such a negligence cause of action is a form of property covered by O'Hare's policy. We reject that notion. And isn't that the argument they made because they had the care and custody exclusion and were in a position where they basically had to allege that the loss of the cause of action was tangible property? I think that's probably right, Your Honor. And here, we're not arguing that a negligence cause of action, an expoliation claim, is property. When you look at the language here, the loss of the coverage is under the auto inventory coverage. Well, what does the loss of the use of the property mean? And what kind of property are we talking about for the loss of use? The loss of use of the property under the auto inventory coverage, it's customer's auto or covered auto, and in the garage coverage, it's tangible property. And here, the tangible property, the customer's auto, the covered auto, is the vehicle. And I don't believe Universal has disputed that. So, therefore, you have the tangible property. Isn't there a conflation here between what the loss is and what the measure of damages would be? In other words, the loss in Essex was alleged to be the loss of the cause of action, to get around the care and custody exclusion. That is not being alleged here. What's alleged here is that the automobile itself, the use of it, was lost. And moving then on to what the damages would be for that loss, that loss would be the loss of use of it as evidence in the underlying cause of action. That's correct, Your Honor. I think it's a subtle distinction, but I think it's borne out in the language of the policy. These aren't damages for... A claim for spoliation is not a claim for property damages. It's a claim for damages which are as a result of the property damage. They're claims which are because of damage to or loss of use of tangible property. And I think Essex's holding is narrow in the sense of what it is. And I think Essex said what a claim for spoliation damages was not. The court in Kamin, while not addressing an insurance coverage issue, addressed what the damages for a spoliation claim result from or arise from. The language used in Kamin was damages in a spoliation case arise from the defendant's destruction of evidence. And I would submit that that principle is directly on point here. Once you have property damage, any damages or consequential damages that flow from that property damage, which is covered under the policy, should be covered. And the insurer should provide a defense and indemnity. And I think it's a Seventh Circuit case interpreting Illinois law, but the Wausau Underwriters v. United Classics group put it well in saying in liability insurance law, once there is damage to covered property, the victim can recover the non-property, including business losses resulting from that damage and not just the diminution in the value of the property. And I think that the talk of diminution in value here really is not the point. There's an exclusion that Universal cites for diminishment or depreciation of a vehicle. That's not what this claim is about. That's not what the underlying claim is about. And the other main exclusion that they rely on is the care, custody, and control exclusion. Now, that certainly was an issue in essence. Here, first of all, part 300, which is the auto inventory coverage, does not have a care. Isn't the definition of care, custody, and control the same for both of them? And isn't it axiomatic that if it's interpreted one way as for one exclusion, it's interpreted the same way for the other exclusion? Sure. But even the exclusion under part 500, there's a care, custody, and control exclusion, but under the garage coverage, which has that exclusion, there's also coverage for auto hazard, which requires care, custody, and control. But isn't it really the case that the garage exclusion excludes the claim and the other part doesn't? If that exclusion applies. And you can't have it both ways, and neither can they. Yes, yes, Your Honor. Although I would say the control has to be exclusive. And the allegations in the underlying complaint, the Gramacchia State alleged farmers had control. Farmers alleges LKQ had control. There's an issue of fact. Who had this control? Had control, the Wisconsin State Police. There's allegations that the Wisconsin State Police had a hold on the car. There's no allegation as to they released the hold. So I would say there's a question of fact on the care, custody, and control. But if it does apply, it would apply to the garage and not to the other end of the event. Correct. Universal also raises an intentional act exclusion, which is exclusion G to the auto inventory coverage part 300, which excludes intentional acts committed by stockholders, partners, officers, employees, agents. But the exclusion goes on to say it does not apply to a covered auto destroyed or damaged by your employee acting without the knowledge of your partners or executive officers. And there's no allegation in the underlying complaint that any of LKQ's executive officers or partners have knowledge or directed the destruction of this. So Universal has not shown that this exclusion applies. It also, the definition of occurrence in the garage coverage says an accident neither intended nor expected, which is a negligent standard. And the underlying complaint certainly alleges negligence. They don't allege intentional conduct. So that exclusion or argument against coverage does not apply. Universal also makes... I am, Your Honor. Mr. Walsh. The trial court entered judgment for Universal because it found as a matter of law there was no duty to defend or indemnify LKQ under Illinois law, a claim for the diminution in value of a spoilation cause of action was not a claim for property damage. And there's been nothing in the briefs or in the argument of LKQ to show that the trial court was in error in any way. Are you familiar with the Keeley case? It's United Fire and Casualty v. Keeley, 381 Illinois Appellate 3rd, 1119, 2008. Well, you know, that's a case that's following in time Essex. It has a similarity to Essex in the sense that the court in Keeley and in Essex never really had the occasion to consider whether damages sought in a spoliation claim are the result of damages to tangible property. And the problem I'm having with your argument in your brief is not that a disagreement about whether Essex is good law or not. It's that Essex doesn't appear to have reached the issue for which you are citing it now. In other words, they've never reached the issue of whether damages to tangible property can, as its impact and consequential damages, reward or compensate for the loss of an intangible property, which is a cause of action. Because neither Essex nor, for that matter, Keeley had a situation where the claim being sought was that the loss was to actual tangible property, i.e., an automobile, and the consequential damages flowing from that loss happened to be the damage to an underlying cause of action. Your Honor, I would point to Essex, and I believe that Essex did reach that opinion. If you look at it, it says, again, on page 440, in that case, I think Essex is even stronger. Our case is even stronger, factually, in Essex because in Essex the estate actually owned the Bronco, the car that was destroyed. So let's leave the ownership aside because I think that's a completely different issue. But what they did was they filed suit for the damage to the car, and the court looked at the care, custody, and control exclusion for that. And what did the court say? The court said that because the estate was looking for damage to the automobile itself, the care, custody, and control exclusion barred coverage for that  If they were to allege any damage to the car as the loss, they would have lost everything, right? But they did do that. They did make a claim for the value of the car, and that's what I'm saying the difference in this case is. In this case, in our case, the estate did not own the car, and so they did not make a claim. But in Essex, they made two claims. They made a claim for the car, but they also made a claim, separate claim, for the diminution in value of their product's liability. They claimed the loss as an alternative loss was the loss of the cause of action. And that was an attempt to avoid, or get around, the fact that the care, custody, and control exclusion would have otherwise barred their entire claim. If they hadn't alleged that as the loss, they would have lost their entire cause of action. And what the court in Essex says is, no. A loss of a cause of action is not a tangible piece of property. And I don't disagree with that. But here, you have two possible exclusions, and the garage exclusion is similar to the one in Essex. Because if you claim care, custody, and control, you're out. But the other exclusion allows it. And so the lawyers in this case did not allege that there was a diminution of value in the underlying case as a loss. They claimed that the automobile was the loss, and that the consequential damages to that loss was a diminution in value. And so you're conflating, in my mind, loss versus damage. And under the contract, there are different concepts. First of all, I would point out that you don't get to the exclusions until you get past the grants of coverage. And under neither 300 nor 500, is there a grant of coverage unless there is loss to tangible, physical property? Can it be argued that the destruction of the automobile doesn't constitute a loss of the use of the automobile? Not to the Grimacki estate, who's the one that's making the claim, because they don't own it. Remember, the claim is... But they were going to use it. That's where use comes in, rather than value. Right, but they're not going to use it. The damages don't flow from a lack of not being able to drive it or not having it... They were going to use it as tangible evidence in a cause of action. Right, but that's, you know, if you look at the case law from, I mean, I think Illinois law applies, and I think... Essex, you know, it says the estate seeks to recover not only for the damage to the destroyed vehicle, but also for the diminution of the value of the product liability claim resulting from the destruction of the evidence. That's exactly what they're asking here, is they are saying that... You know, what Grimacki's saying is that their claim, their product liability claim, was diminished because of the destruction of the evidence. The evidence in Essex was the car. The evidence in this case is the car. And what they said, what the Essex court then said is, that's not property damage. You need covered property damage. The fact that there may be some facts in the underlying case that deal with property damage is not enough. You need something that's covered, something that's covered by the policy. And since the car isn't owned by the Grimacki estate, Grimacki estate's the one making the claim, physical damage to the car cannot serve as covered property damage, which I agree that if they could show covered property damage under the policy, then you can get consequential damages and you can get damages arising from that. But first you need covered property damage. And since they don't own it, since there's no claim, and there can be no claim for covered property damage because they don't own it, you don't get the consequential damages. And that's why I beg to differ on Essex. I do think it not only is it directly on point, but the fact situation in our case is even stronger than Essex. Because in our case, they, the estate, didn't own the car. In Essex they did. So they had, at least in Essex, they had physical property damage to the car. And the court still said, okay, but you're not going to get, you cannot get coverage for the diminution in value of the spoliation claim because that's not property damage. Have you come across the case of Universal Collision Center Inc. versus Travelers Indemnity of Connecticut, a northern district of Florida case, which of course isn't binding on us, it was decided last year. But it really points out what you and I have been discussing in the colloquy because there the court concluded that the underlying plaintiff's loss of the use of a right wheel assembly for evidentiary purposes constituted a loss of the use of a component of the customer's vehicle under the policy. And that's the same type of a situation we have here. We have a car that they've lost the use of, but the measure of damages for that use was the loss of its use of its physical properties for use in proving an underlying claim. May I ask in that case was the claimant or the insured the owner of the car? Yes. Okay, because in this case they're not. I mean, in this case it's the owner of the car. I brought this chart to try to keep the players a little straight. The owner of the car is not part of this action. The owner of the car was Mr. Wodoski. His son was the driver. They were not sued, and they're not part of the action. The claim is the estate against Nissan and the product's liability. And once the estate found out that LKQ had destroyed the car, they then brought it to the initial indictment, and that's it, against farmers, which, of course, brought it against LKQ. Well, did the court in Essex mention anything about the relationship between the estate in that case and the coverage? Well, in that case, like I said, this is why I think I was asking. No, I know. In the Essex case, you have an actual owner who has to have the car preserved. You have destruction of that car, and you have the owner seeking claims for not only the damage but also the resulting damage in the loss of the exfoliation claim. Right. But here you don't have an owner. You don't have an owner because they're not part of the case. And that's why I'm saying there's no possibility. In Essex, you have the owner in here, and one of his claims was… In this case, in the record, there's some evidence that apparently the car was totaled out and, therefore, Illinois farmers became the owner of the car, and, therefore, when they made their claim, they have a standing under that policy. They didn't become the owner of the car until far down the line. That was a member of the claim being asserted. It's just a misclaim, and it's just… Is there anything in the record that tells us when they actually became the owners? There is probably something in one of the summary judgment motions, right? I can't remember exactly. I don't know if it says the date, but it did. But my point is it doesn't really matter whether they ever became owners of the car at any point because you've got to go back to what the coverage is for, and that's where this claim came from. This is the claim by the Vermont State, the exfoliation of evidence. This is passed as a contribution. They're saying, look, farmer. The farmer is saying, look, we told you not to destroy this thing, but if we get hit with this, we're coming after you. And that just blows back up to the dramatic claim, which is simply one count for exfoliation of evidence, and if you don't claim for the car, and they can't claim for the car or its destruction because they don't own it, these guys are out to get us. Now, at some point in time, I do believe farmers purchased the car from its insurers, who were the Wadatskis, but it really doesn't ever factor in. Did you strenuously argue this point about the ownership? Do you think that the judge in any way decided this case based on what you're saying now? I think she took it into consideration. I mean, I think she did mention it in the... Can you tell me where in the policy it says that in its language to support the argument that the claimant against the insured must own the property that is physically injured? Yes, Your Honor. I mean, doesn't it really just say that the owner of the vehicle has to bring the suit? All it requires is loss to a covered vehicle, which this clearly was. In coverage part 500, it requires, it says that it must be because of injury. It says in the insuring agreement part, legally must pay as damages because of injury to which this insurance applies. And then it defines injury as damage to or loss of use of tangible property. Okay, I interrupted you. Go ahead. Tie it up. Okay, and it's the same, the coverage part 300 is similar, requiring a loss being direct and accidental physical loss or damage. And you can't get coverage for somebody else's property under a policy. I mean, it's got to be your property. I mean, if my neighbor's car is destroyed, I can't say that that's... Isn't property defined in the policy? Property is defined in the policy, Your Honor. Well, how is that defined? I mean, it's clearly covered property. On general principle, I can't, if something, if my property is damaged, I can't go to another policy that I'm not covered under to try to get coverage. Correct. Yeah, we understand that. Okay. Isn't this a covered property? It's a covered vehicle. And it's loss to a covered vehicle. But there's not a claim for loss to the covered vehicle. There's a claim for diminished value of exfoliation. No, there's a claim to the loss of the covered vehicle with damages down the road being shown as a diminution of the value of the loss. That's where we started. And, again, Your Honor, I would look back at it. You have to look at what the claim is. And the claim is for the exfoliation of the diminished value of a product's liability claim. Of a non-owner. By a non-owner. And so there's no property damage in there. And there's no covered property damage in there. And that's, when you look at the cases that the LKQ cites, I think all but one of them, and the one that doesn't do this is a 1986 Michigan case, all require property damage by the claimant. By the claimant. It has to be their property damage. In this case, the Grimacki Estate doesn't have it. I mean, that's consistent throughout. If you look in the reply brief, which obviously we didn't get a chance to reply to, but if you look at those cases, all but that DeMombro case, every other case they cite, it was property damage of the claimant. Don't we have a lot of cases in Illinois that have the holding that the courts really don't consider whether the property, the party asserting the claim against the insured owned the property at issue when considering whether the policy covers, and this case, for example, Elko Industries, where there was a finding that the manufacturer was attempting to recover costs it incurred in repairing engines in a recall program after the supplier's product failed. And they said they could recover part of the repair costs, even though the manufacturer did not own the products that had been recalled because they had already been sold. In other words, you have a situation where the ownership of the covered property is found not to be decisive in any way. Well, I haven't seen that case, and I don't know what the policy language was in that case, and I'm not exactly sure what they said. But, you know, I'm looking at the language of our policy, and I'm looking at the Essex case, which is directly on point. And it says that, you know, if the claim is for diminution in value, that's not tangible property damage. Well, there's also a Seventh Circuit case interpreting Illinois law, Travelers Insurance v. Panda, that says, quote, Illinois cases do not consider who owns the property in question when determining if a claim is within policy coverage, end quote. Again, that's not a case that was cited by LKQ. We're not limited to those. Well, I understand. I understand. I just haven't. I'm not familiar with it, and I'd have to take a look at that. I know that from what I have seen, you know, the Illinois law, the directly on point is Essex, and it says diminution in value of a product's liability claim is not a claim for tangible property. And unless you have that, you cannot get consequential damages. You cannot get any damages arising out of it. It must have that tangible property first. And there was a loss of use provision in the Essex case. The Essex case specifically referenced it, and then right after that said there is no coverage. And like I said, in that case, the estate even owned the car and was even making a claim for it. In our case, they don't. So even when there was a claim for a car, the court found no coverage because no tangible property damage. One thing, and I know I'm about out of time here, but Mr. Morelli mentioned Exclusion G. I mean, that goes to the intentional business of, you know, if you get into the Wisconsin law. But our claim that both coverage parts require intentional actions is not based on Exclusion G for 300. If you look at exclusion, if you look at the grant of coverage under 300, loss is defined as accidental damage. So both under 500, which is. Isn't. Oh, I'm sorry. Go ahead. Wouldn't there be a question of fact certainly on accidental versus intentional under this policy? There may be, but I don't think it's been alleged. I mean, this is pretty far down the line in all of these arguments. If you've got a duty to defend case, you're stuck with the allegations in the complaint. You're claiming that there's no duty to defend here, and we look at the allegations of the complaint, and we don't really know for indemnity purposes, for example, what happens until. You're right. But the only reason it came up was because they asserted that Wisconsin law applied, which we don't think applies. Then we agree that the complaint actually alleges negligent destruction, which we say, okay, that's correct. And if you're going to insist that Wisconsin law apply, they don't recognize negligent spoliation of evidence. And so our only point in bringing it up was if you're going to go down that road and you're going to go down to Wisconsin law and you want to assume that, then they have to allege. They have to. They have no choice. They have to allege that it was intentional because Wisconsin only will provide sanctions for destruction of evidence that are intentional, and they admit that in their briefs. So I'm not here arguing that. And you say it's a question of fact. I'm just saying if you're going to go down, if the defense is going to go down that road and say it's Wisconsin law, then they have to allege that it's intentional because if it's not intentional, there's no cause of action under Wisconsin. If it's not intentional, if it is intentional, then under both the coverage parts, 300 and 500, there's no coverage because they both require accidental. And that's where we were coming from. That was just a response to where they were going down the line. Thanks, Mr. Moore. All right. Thank you very much. Appreciate it. Any final words, Mr. Moore? On the ownership question, we looked at the language of the policy. The only part of the policy that deals with ownership is the care, custody, and control exception, which we discussed.  And the language cited by counsel doesn't address whether the claimant in the underlying action must own the property, the tangible property that the customers ought to. There's just no language in the policy to support that argument. And that really is my only main point. On the choice of law, we think there's no conflict. And therefore, under Illinois law, there is the duty to defend here. There is coverage. Essex holding is narrow. And the other cases within Illinois and outside of the state support the principle that once you have an allegation of damage to property or loss of use of that property, any claim for damages that result from that or a consequence of that or because of that are covered. I would ask the court to reverse the trial court's grant of summary judgment for universal and denial of partial summary judgment. Thank you both for a very well-presented argument and very well-argued briefs. We'll take the case under advisement.